IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN CHERN & JASON ALLEN, | ) |
| Appellants, | ) |
| vs. | ) Case No. 20 C 5381 |
| PATRICK S. LAYNG, United States Trustee, | ) |
| Appellee. | ) |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This is an appeal from two orders entered in the bankruptcy case of Charles V. Cook, Sr., who was represented by Upright, a law firm with bankruptcy and consumer rights litigation practices. In the first order, issued on December 17, 2019, the bankruptcy court granted the United States Trustee's motions for sanctions and for examination of fees against Upright and its individual attorneys, including its principal owners/managers, appellants Kevin Chern and Jason Allen. The court found the appellants jointly and severally liable for reasonable attorney's fees and costs incurred by the United States Trustee (UST) based on their firm's abuse of the judicial process. The court directed the UST to file an itemized request for reimbursement of fees and costs and the appellants to file an objection. The court's second order, issued on August 26, 2020, awarded the UST attorney's fees and costs in the amount of $48,084.10 and ordered Chern and Allen to comply with this fee sanction.

Chern and Allen have appealed the bankruptcy court's orders. They contend that

the bankruptcy court's imposition of the fee sanction (1) violated their due process rights, (2) did not comply with *Goodyear Tire & Rubber Company v. Haeger*, 137 S. Ct. 1178 (2017), because the bankruptcy court's rationale went beyond bad faith litigation misconduct, and (3) was improper under 11 U.S.C. § 105, the Bankruptcy Code provision that confers equity powers upon the court. For the reasons set forth below, the Court reverses the bankruptcy court's fee award.

## Background

**A.      Cook's retention of Upright**

Chern and Allen, both consumer bankruptcy lawyers, were the principal owners and managers of Upright. Upright mostly represented bankruptcy debtors in the Chicago market until Chern expanded the firm's practice to include representation of plaintiffs in Fair Debt Collection Practices Act (FDCPA) litigation. Many of Upright's consumer rights litigation leads came from existing Upright bankruptcy clients.

In June 2014, Upright filed two FDCPA lawsuits, *Rushmore* and *Praxis*, on behalf of Cook. *See Cook v. Rushmore Serv. Ctr., LLC*, No. 14 C 4180 (N.D. Ill. June 6, 2014); *Cook v. Praxis Fin. Sols., Inc.*, No. 14 C 4916 (N.D. Ill. June 30, 2014). In August 2014, the *Rushmore* case settled for $3,500.

In October 2014, David Gallagher, a senior bankruptcy associate, filed a chapter 7 bankruptcy petition on behalf of Cook. In November 2014, David Levin, Upright's head of consumer rights litigation, informed Chern that Cook had a pending FDCPA case, *Praxis*, and that it had not been disclosed in the bankruptcy petition; Levin also instructed Gallagher to amend Cook's sworn schedules and Statement of Financial Affairs (SOFA) to include the pending *Praxis* settlement and the funds Cook received for

2

the *Rushmore* case, which Levin had just settled. Later that month, Gallagher filed an amended schedule B disclosing the *Rushmore* FDCPA settlement and an amended schedule C claiming the asset as exempt; Gallagher did not amend the SOFA. In December 2014, the *Praxis* lawsuit settled for $3,600. Cook received a discharge from the bankruptcy court in January 2015.

In November 2016, in a bankruptcy proceeding involving Upright's representation of another debtor in the Western District of Washington, the UST in that district filed a sanctions motion against Upright, alleging inadequate disclosures of consumer protection claims. *See In re Foster*, 586 B.R. 62 (Bankr. W.D. Wash. 2018). In December 2016, Upright developed an internal procedure for proper disclosure of consumer protection claims in bankruptcy petitions.

In June 2017, the UST in this district moved to reopen Cook's chapter 7 case and filed motions seeking sanctions against Upright, Allen, Chern, and Gallagher based on misleading bankruptcy filings. The UST alleged that Upright engaged in a pattern and practice of inaccurate disclosures of FDCPA litigation in Cook's bankruptcy filings and in other cases involving bankruptcy clients, in violation of the Bankruptcy Code. *See* Appellee's Rec. Excerpts, UST's June 2017 Mot. for Sanctions at 8 (dkt. no. 3-4) (ECF page ID #1672) (describing five cases other than Cook's case "where Upright law represented the bankruptcy debtor as plaintiff in an FDCPA action within the year preceding the bankruptcy filing" and "the debtors' FDCPA litigation was not disclosed. . . ."). The UST further alleged that Allen, Chern, and Gallagher provided deficient legal services to Cook. The UST sought a civil penalty and an injunction pursuant to 11 U.S.C. § 526(a)(2), asked the bankruptcy court to censure the individual attorneys

3

under 11 U.S.C. § 105, and requested an award of attorney's fees and costs to the UST associated with prosecuting the sanctions motion. *See* UST's June 2017 Mot. for Sanctions at 15.

In March 2018, while discovery was underway on the UST's motion for sanctions, the UST filed a second motion seeking examination of fees and disqualification of Gallagher and Upright as counsel for Cook based on 11 U.S.C. §§ 105 and 329. The UST sought (1) an order directing Upright to refund all fees paid by Cook; (2) an order to cancel the firm's retention agreement with Cook; and (3) disqualification of Gallagher and Upright from representing Cook at a deposition regarding the UST's June 2017 sanctions motion.

In December 2018, the bankruptcy court conducted a three-day evidentiary hearing on the UST's motions. At the hearing, the individual attorneys admitted that Upright repeatedly failed to disclose FDCPA cases in bankruptcy proceedings where the firm represented the debtor as a plaintiff and that the firm's legal services provided to Cook were deficient. Chern also admitted that Upright had violated 11 U.S.C. § 526(a)(2) because it submitted bankruptcy filings containing untrue and misleading statements regarding Upright's representation of Cook in FDCPA litigation.

**B.     The bankruptcy court's December 2019 order**

On December 17, 2019, the bankruptcy court issued findings of fact and conclusions of law regarding the UST's motions. In that decision, the court discussed extensive litigation misconduct committed by counsel for Chern and Allen while discovery on the UST's motions was underway. *See, e.g.*, Appellants' Rec. Excerpts, Dec. 12, 2018 Hr'g Tr. 17:15-23 (dkt. no. 3-2) (ECF page ID #1303) ("This is the type of

4

gamesmanship that I have repeatedly warned counsel for the respondents about, and it has been consistent."). The misconduct, the court said, included document production delays; the assertion of "vague privilege objections without providing a supporting log" as required by procedural rules; repeatedly relying on a claim preclusion theory that the court rejected; and "demand[ing] specific information from the UST about its regional structure and any communications between offices about litigation against Upright" to support the claim preclusion theory the bankruptcy court had already rejected. *In re Cook*, 610 B.R. at 862-63.

In its December 2019 order, the bankruptcy court "issued a stern rebuke to [respondents'] counsel along with a threat of sanctions under Fed. R. Bankr. P. 9011 for continued improper conduct." *Id.* at 863. The court further explained that the "history of contentious dealings from the time the UST reopened this chapter 7 case to seek sanctions in June 2017 through a year of discovery and the ensuing [evidentiary hearing] is relevant to this court's analysis of the pending motions for sanctions." *Id.* The bankruptcy court then turned to the UST's requested relief. *Id.* at 864. It concluded that the respondents—referring to Upright, Allen, Chern, and Gallagher—failed to offer any plausible explanation for their failure to disclose the FDCPA suits in Cook's bankruptcy case. The court, based on its statutory authority under 11 U.S.C. § 329 and § 105(a), required Upright to disgorge $2,500 it received in connection with its representation of Cook. *In re Cook*, 610 B.R. at 870-71. The court also determined that there was "ample evidence of the same pattern of inaccuracies in quite a few of Upright's [nationwide] bankruptcy filings" from 2014-2016, in which Upright failed to disclose FDCPA litigation it undertook on behalf of the debtor. *Id.* at 865. Based on this

determination, the bankruptcy court imposed a civil penalty for Upright's repeated violations of its statutory obligations under § 526. *Id.* at 867-69. Chern and Allen have not appealed the bankruptcy court's ruling with respect to the § 526 issue.

The bankruptcy court declined the UST's requests for a censure and an order for Gallagher, Chern, and Allen to attend ethics and professional responsibility courses. It concluded that the inadequate disclosures in Cook's case "stemmed from a flawed business model." *Id.* at 870.

Finally, and most importantly for purposes of this appeal, the court held Chern and Allen jointly and severally liable, "as principals of the firm and named respondents," *id.* at 871, for reasonable attorney fees and costs incurred by the UST since the reopening of Cook's case, excluding amounts the court had already awarded, for what it characterized as extensive litigation misconduct:

> Based on the totality of the situation, the court concludes that Upright abused the judicial process in this case, and that Allen and Chern, as principals of the firm and named respondents against whom sanctions were sought, should be held accountable for those actions. The court has already recounted the unduly burdensome discovery process and pretrial antics that should not have occurred. Upright vexatiously extended the litigation process by, on the one hand, waiving [sic] the white flag and appearing to cooperate with the UST, while on the other hand, engaging in multiple discovery abuses and pushing unreasonable litigation positions. The sole purpose for that conduct was to frustrate the UST and the judicial process, plain and simple. Allen and Chern have every right to zealously defend themselves and their business in a case that was aggressively litigated on both sides, but engaging in gamesmanship that wastes the limited resources of the judicial system will neither be tolerated nor rewarded.

*Id.* at 871. The court directed the UST to submit an itemized request for reimbursement of attorney's fees and expenses for prosecuting the motions.

On January 7, 2020, the UST submitted its itemized request. *See* UST Itemized

6

Request at 1-3 (ECF page ID #1534). The UST represented that the request did not include any attorney fees incurred prior to February 26, 2018, the date that respondents requested a stay of all discovery. *Id.* at 1. The UST further stated that it did not seek fees for the drafting of the motion to reopen, the drafting of the motion for sanctions, addressing the respondents' motion for sanctions against the UST, discovery prior to February 26, 2018, or the preparation of a privilege log. *Id.* The UST attached two exhibits containing itemized descriptions of work performed—including researching and drafting the March 2018 motion and a motion to compel a third party to produce documents, discovery activities such as deposition preparation, activities connected to the evidentiary hearing on the June 2017 motion, and pre-trial tasks. In total, the UST sought $135,956.84 in attorney's fees for 781 hours of work and $9,036.05 for costs. *See* UST's Ex. A, Itemization of Fees at 1-23 (ECF page ID #1537-1559); UST's Ex. B, Itemization of Costs at 1 (ECF page ID #1560).

Chern and Allen objected to the UST's fee request. They argued that the UST's award should be limited based on the Supreme Court's decision in *Goodyear*, which imposed a "causation requirement": the UST could only recover fees and costs "that he incurred *solely* as a result of litigation conduct by Respondents' counsel that the Bankruptcy Court found to have occurred in bad faith." *See* Objection to Itemized Request at 4-5 (page ID #1564-1565). *Id.* at 4-5; *Goodyear Tire & Rubber Company v. Haeger*, 137 S. Ct. 1178 (2017). Furthermore, Chern and Allen said, the UST's itemized request did not identify fees incurred because of "discrete instances of misconduct," which they contended "renders its Request deficient." *Id.* at 5. They also contended that the majority of fees sought by the UST were for work that was not

7

connected to bad faith misconduct; rather, "these [were] categories of work that the UST was engaged in . . . to prove the merits of his position in the litigation." *Id.* at 6. For example, Chern and Allen argued, the time the UST spent in connection to the depositions of ten individuals—including Chern, Gallagher, and Cook—was not specifically necessitated by litigation misconduct, such as the claim preclusion defense rejected by the bankruptcy court or one of the Upright attorneys' failure to attend a deposition. *Id.* at 7-8. Accordingly, they argued that the bankruptcy court's authority to award attorney's fees should be limited to the "minimal attorney's fees" that the UST incurred in connection to the respondents' motion to stay discovery—$917.43. *See* Objection to Itemized Request at 8-9 (page ID #1568-1569).

**C.     The bankruptcy court's August 2020 order**

On August 26, 2020, the bankruptcy court issued an order awarding attorney's fees and costs to the UST in the amount of $48,084.10 based on the respondents' "misconduct and abuse of the judicial process throughout these proceedings." Aug. 2020 Bankr. Order at 2 (dkt. no. 1-5). The court stated that Chern and Allen, "as principals of Upright, directed the firm's actions and oversaw its attorneys" and that holding them "personally accountable is therefore appropriate." *Id.* at 3.

The court then stated the legal basis for sanctioning Chern and Allen for litigation misconduct: (1) a court's inherent power to impose sanctions for abuse of the judicial process, and (2) a bankruptcy court's statutory authority under 11 U.S.C. § 105, which the court stated is separate from but "overlap[s]" with the inherent power. *See* Aug. 2020 Bankr. Order at 3-4 (citing *In re Rimsat, Ltd.*, 212 F.3d 1039 (7th Cir. 2000)). The court explained that the "main difference between the inherent power and § 105 is that

the former requires a showing of bad faith while the latter may not." *Id.* at 5. The court noted that "the sanction should be proportionate to the abuse" and "may be severe but should not be too severe." *Id.* Further, the bankruptcy court stated that "there should still be some level of causation between the fees and the sanctioned actions, regardless of if the sanctions were granted under § 105 or the inherent power." *Id.* "Thus, costs and fees reasonably incurred by the UST as a result of the sanctioned conduct are proper and will be allowed here." *Id.*

The court then analyzed the UST's attorney's fee request. It observed that the UST "did not separately categorize the work by task and activity" and summarized the arguments in the fee objection submitted by Chern and Allen. *Id.* at 6. The court rejected Chern and Allen's argument that the UST needed to identify the fees it incurred based on the appellants' discrete instances of misconduct, but it agreed with the appellants that many of the UST's itemized requests were unjustified. The court concluded that a "percentage reduction" of the UST's request, based on 781 hours of work, was "the best way to determine the appropriate amount attributable to Respondents' wrongful actions." *Id.* at 8. It determined that thirty percent of the attorney fees requested by the UST should be assessed for the misconduct. The court arrived at this figure by determining that a reasonable amount of time for two attorneys to address the "straightforward issues" in the June 2017 and March 2017 motions would have been about 200 hours, but the respondents' "actions" during discovery—presumably referencing the abusive litigation tactics the court described in the December 2019 order—"certainly increased that figure unnecessarily." *Id.* at 8-9.

Finally, the bankruptcy court discussed the UST's request for an award of costs.

9

It stated that the appellants unnecessarily increased the costs associated with the UST's motions, by "causing the UST to depose multiple key witnesses in order to pin down [respondents'] changing stories"; "repeatedly assert[ing] privilege objections without providing an appropriate log"; and engaging in "gamesmanship [that] forced the UST to incur costs to cover all its bases before trial and to obtain transcripts of every court hearing." *Id.* at 9. The court also noted that that the UST impeached "Upright witnesses several times with inconsistent statements from depositions taken just months earlier." Accordingly, the bankruptcy court awarded the UST "all costs except for the transcripts of trial proceedings." *Id.*

On September 10, 2020, Chern and Allen filed a notice of appeal, seeking review of the bankruptcy court's orders.

## Discussion

The Court has jurisdiction over appeals from the bankruptcy court's final orders, *see* 28 U.S.C. § 158(a)(1), and reviews that court's findings of fact for clear error and its conclusions of law de novo. *In re Jepson*, 816 F.3d 942, 945 (7th Cir. 2016). A bankruptcy court's decision to impose sanctions is reviewed for abuse of discretion. *In re Sokolik*, 635 F.3d 261, 269 n.2 (7th Cir. 2011) (citing *Rimsat*, 212 F.3d at 1046). An abuse of discretion occurs "only when a court has acted contrary to the law or reached an unreasonable result." *Sokolik*, 635 F.3d at 269.

**A.    Timeliness of appeal**

The UST argues that the Court lacks jurisdiction over the challenge to the bankruptcy court's December 2019 order because Chern and Allen did not file a notice of appeal until September 10, 2020. Accordingly, the UST says, the appeal was

10

untimely under 28 U.S.C. § 158(c)(2) and Fed. R. Bankr. P. 8002 with respect to that ruling. Under Bankruptcy Rule 8002(a), an appeal from a bankruptcy court decision must be filed within 10 calendar days of the date of entry of the order at issue.

"An order in a bankruptcy case is considered final when it resolves one of the individual controversies that might exist as a standalone suit outside of the bankruptcy." *Germeraad v. Powers*, 826 F.3d 962, 965 (7th Cir. 2016). The December 2019 order granting the UST's motions for relief was not a final, appealable order; it addressed the issue of liability for fees but did not resolve the dispute by actually awarding fees. *See Matter of Behrens*, 900 F.2d 97, 100 (7th Cir. 1990) ("[a] judgment declaring a defendant liable for damages to a plaintiff but not fixing the amount of damages is not a final judgment"). "[A]n order awarding attorneys' fees but not fixing the amount is generally not final and appealable." *Id.*; *see also Matter of Anderson*, 916 F.3d 566, 570 (7th Cir. 2019) (concluding than an order where "[bankruptcy court] denied a motion to dismiss but left open questions such as whether the [creditor] is entitled to a deficiency judgment and if so, how much" was not final); *see also In re Johnson*, 586 B.R. 449, 452 (N.D. Ill. 2018). Accordingly, there is no legitimate timeliness issue here; Chern and Allen's appeal properly challenges not just the actual award of fees in August 2020 but the underlying December 2019 order that adjudicated the UST's entitlement to fees.

**B.     The fee award**

Chern and Allen challenge the bankruptcy court's fee sanction against them on three grounds: (1) it violated their procedural due process rights; (2) the court awarded fees and costs in a manner inconsistent with the requirements of the *Goodyear* case; and (3) it was improper under 11 U.S.C. § 105 because it was based on Upright's § 526

11

violation and not the litigation misconduct.

### 1. Due process

Chern and Allen's initial contention is that the bankruptcy court's fee award violated their procedural due process rights. First, they contend that the award of attorney's fees and costs improperly covered the "entire proceeding" when it should have been limited to "litigation misconduct during the defense of the Motion for Sanctions." Appellants' Opening Br. at 38 (dkt. no. 8). Second, they say that the bankruptcy court "expand[ed] the rationale" for imposing sanctions in its opinion. *Id.* at 39. The "sole rationale offered by the Bankruptcy Court for awarding fees was . . . litigation misconduct," they argue, but the court's decision also "suggested that the Fee Award was also based in part on UpRight's representation of Cook and its pattern or practice of erroneous filings for Cook and other chapter 7 debtors in violation of § 526." *Id.* at 39-40 (internal quotations omitted). Finally, Chern and Allen contend that although the bankruptcy court allowed them to file a fee objection, that objection was only "an opportunity to oppose the amount of attorney fees and costs sought by UST." *Id.* at 39. Further, Chern and Allen say, "[d]ue process precluded the Bankruptcy Court from modifying the factual basis for its award of attorney fees after the filing of a Fee Objection." *Id.* at 40.

In response, the UST argues that the bankruptcy court's fee award did not violate due process because Chern and Allen were provided notice in the June 2017 motion for sanctions and the UST's post-hearing brief that the UST sought attorney's fees. The UST also says that the bankruptcy court afforded Chern and Allen numerous opportunities to argue that a fee award was unjustified in pre-hearing submissions and

12

in their objection to the UST's itemized request for reimbursement. The UST points out in this regard that Chern and Allen took the opportunity to object to the UST's request and persuaded the bankruptcy court to reduce the award significantly in response to their objection. Further, the UST disputes Chern and Allen's contention that the fee award includes sanctions for Upright's § 526 violation; according to the UST, the court referenced Upright's violation of § 526 to provide context and background to the decision.

This Court reviews the appellants' due process challenge to sanctions imposed by the bankruptcy court de novo. *See Bank of America v. Knight*, Nos. 11 C 1625, 11 C 1637, 2011 WL 3882819, at *4 (N.D. Ill. Sept. 2, 2011); *see also Rimsat*, 212 F.3d at 1044 ("As the appellants' due process challenge raises issues of law, our review is plenary."). "Fair notice can come from the court or an opposing litigant, but it must, among other things, inform the person that he or she is in jeopardy of being sanctioned by the court." *Rimsat*, 212 F.3d at 1045 (internal quotations and citations omitted). "[A] court may not, consistent with due process, impose sanctions based on particular conduct unless the parties being sanctioned have received notice (from the court or an opposing party) that that conduct may be the basis for sanctions." *Id.* Furthermore, "[p]roviding an opportunity to be heard includes giving an attorney against whom a court is considering imposing sanctions the chance to present his or her case at a meaningful time in a meaningful manner, but a hearing is not variably required before sanctions may be imposed." *Id.*; *see also Knight*, 2011 WL 3882819, at *4.

The bankruptcy court record reveals that Chern and Allen were denied due process. The UST's first motion for relief, filed in June 2017, made clear that the UST

sought attorney's fees and costs it incurred in connection with prosecuting the motion. UST's June 2017 Mot. for Sanctions at 14. But this was a simple request for fees relating to the fee litigation; it did not reference litigation misconduct, none of which had taken place at that point. And the sanctions motions themselves, as the Court has discussed, made no reference to litigation misconduct either; they sought sanctions on other bases. Nor, at the December 2018 hearing, was any reference made by the judge or by the UST regarding the possibility of imposing sanctions for claimed litigation misconduct that counsel for Cook had committed—let alone Chern and Allen. The bankruptcy court's December 2019 order, however, imposed a sanction involving a significantly wider scope than the basis on which the UST sought sanctions: the court required Chern and Allen to pay "reasonable attorney fees and costs incurred by the UST *in this entire proceeding since the case was reopened*, excluding any amounts already awarded by the court." *In re Cook*, 610 B.R. at 871 (emphasis added).

        a.        The UST's "theories of claims" filing

On November 21, 2018, the UST filed its pre-trial theories of claims. *See* UST's Theories of Claims at 3 (ECF page ID #1424). In its submission, the UST argued that Chern and Allen's "actions in Mr. Cook's bankruptcy case subsequent to the Motion for Sanctions, and in response to the Motion to Examine/Disqualify confirm the need for sanctions." *Id*. The UST identified three distinct examples of conduct, including the "filing of an unfounded Rule 9011 motion"; "failure to timely correct the inaccurate sworn Schedules and SOFA of record"; and "the solicitation and procurement of a purported conflict of interest waiver from Mr. Cook. . . ." *Id.* Beyond these three examples, the UST did not mention any other specific instances of misconduct on the part of Chern

14

and Allen since the case's reopening—such as vague privilege objections or any other examples of misconduct the bankruptcy court later, in its December 2019 order, referenced as the basis for the fee sanction on Chern and Allen. *Id.* Accordingly, the UST's theories of claims did not put Chern and Allen on notice that they were in jeopardy of facing sanctions for misconduct since June 2017. *See Rimsat*, 212 F.3d at 1045.

          **b.**     **Post-hearing briefs**

In the UST's post-hearing brief, which it filed on February 15, 2019, it requested an order that Chern and Allen personally pay fees and costs incurred in connection with the June 2017 motion and "all directly attendant matters, including the Motion to Examine/Disqualify." UST's Post-Trial Br. at 7 (page ID #3132). In other words, via this brief, the UST broadened its request for sanctions beyond what it discussed in the "theories of claims" filing and beyond what its motions for sanctions sought. In particular, the UST now argued, for the first time, that sanctions were warranted because Allen and Chern played "discovery games." *Id.* at 2. The UST also argued that they "ignor[ed] facts and behave[ed] vexatiously"—beginning "with their first filings in the reopened case" and continuing "uninterrupted through their testimony at trial." *Id.* at 8. Had Chern and Allen "been forthright in litigation," the UST contended, "substantially less time and expense would have been necessary" and the "award of fees would have a compensatory character." *Id.*

By order of the bankruptcy court, the parties filed their post-hearing brief simultaneously, on February 15, 2019. Accordingly, at the time they submitted their own post-hearing brief, Chern and Allen could not have possibly have been on notice

15

that the UST was requesting sanctions based on much more than the conduct it described in the November 2018 theories of claims.

In their post-hearing brief, Chern and Allen directly responded to the arguments the UST raised in its theories of claims and argued against the imposition of sanctions. *See* Upright Resps.' Post-Trial Br. at 15 (ECF page ID #1375) ("the UST assert *for the first time* that the Court should impose sanctions on Gallagher, Chern, and Allen [based on three examples of misconduct]"). Further, Chern and Allen argued that the UST's June 2017 motion for sanctions "does not seek any relief on these newly-introduced grounds" and therefore "[t]he UST cannot retrofit his Motion for Sanctions into something it was not in order to obtain relief he never requested." *Id*. "Allowing the UST to obtain relief on these new grounds violates due process." *Id.* at 16.

As previously noted, the Seventh Circuit has ruled that a court may impose sanctions if the parties receive notice from an opposing party "that *that conduct* may be the basis for sanctions." *Rimsat*, 212 F.3d at 1045 (emphasis added). In this case, the UST's theories of claims filing did not state that the UST sought imposition of sanctions against Chern and Allen personally for their counsel's litigation misconduct from the time of the case's reopening. UST's Theories of Claims at 3; *see Delaware Motel Assocs., Inc. v. Capital Crossing Serv. Company LLC*, No. 17 C 1715, 2019 WL 1932586, at *5 (N.D. Ill. May 1, 2019) (Kennelly, J.). The Seventh Circuit has made it clear that the "offending party must be on notice of specific conduct for which she is potentially subject to sanctions." *Martinez v. City of Chicago*, 823 F.3d 1050, 1055 (7th Cir. 2016) (quoting *Johnson v. Cherry*, 422 F.3d 540, 551-52 (7th Cir. 2005)). In this case, the filings that were made before the hearing did not provide Allen and Chern with any

16

notice that they might be personally on the hook.

The Court acknowledges that the UST's post-hearing brief included a request to sanction Chern and Allen under section 105 for "discovery games" and other litigation misconduct since the case's reopening. UST's Post-Trial Br. at 2. But the UST's "more substantial explanation in their [post-hearing] brief cannot cure th[e] omission [in the theories of claims]," especially because the parties filed their post-hearing briefs simultaneously—by order of the bankruptcy court. *Delaware Motel Assocs., Inc.*, 2019 WL 1932586, at *5. In other words, given the simultaneous filings, Chern and Allen were not given fair notice of (let alone a fair opportunity to respond to) the proposal to impose sanctions against them personally.

Moreover, although the bankruptcy court admonished Chern and Allen's lawyer more than once for engaging in improper "gamesmanship," *see, e.g.*, Dec. 12, 2018 Hr'g Tr. 17:15-23), it did not inform Chern and Allen at any relevant time that they were personally "in jeopardy of being sanctioned by the court" for abuse of the judicial process either. *Rimsat*, 212 F.3d at 1045. It follows that they were not given an adequate opportunity to be heard on the question of whether the misconduct was appropriately sanctionable, as required by the Fifth Amendment's due process clause. *Id.* Rather, Chern and Allen were only afforded an opportunity to object to the amount of the fee award, not whether an award—covering the entirety of the UST's attorney's fees and costs since June 2017—was appropriate in the first place. "[T]he failure to provide such notice represents an abuse of the court's sanction power." *Morjal v. City*

*of Chicago*, 774 F.3d 419, 422 (7th Cir. 2014).[1]

Even if the UST's request for sanctions in its post-hearing brief might be deemed sufficient to cure the defect and provide adequate notice, Chern and Allen were not given a fair opportunity to be heard. Specifically, because the post-hearing briefs were filed simultaneously per order of the court, Chern and Allen did not get an opportunity to address whether they should be held personally liable for litigation misconduct by their counsel following the reopening of Cook's case in June 2017. All they got was, later, an opportunity to object to the amount of fees sought. By that time, their due process rights had already been violated. The Court concludes that Chern and Allen were "deprived of the opportunity to confront the court's belief that [they] had engaged in sanctionable conduct and to convince the court (or to try) that [they] should not be sanctioned." *Johnson*, 422 F.3d at 553.

For these reasons, the Court concludes that the bankruptcy court's imposition against Chern and Allen of the monetary sanction at issue in this appeal violated their due process rights under the Fifth Amendment. Because this requires reversal of the bankruptcy court's fee award, *Rimsat*, 212 F.3d at 1049, the Court need not address the appellants' remaining arguments.

---

[1] The Court notes that Federal Rule of Civil Procedure 11(c)(2) and its bankruptcy counterpart, Bankruptcy Rule 9011, require a motion for sanctions to be made "separately" from other motions or requests and to describe the specific conduct alleged to violate the Rule. That was not done in this case with respect to basing sanctions on litigation misconduct following the case's reopening or imposing sanctions against Chern and Allen personally for their counsel's misconduct. Though the bankruptcy court based its sanctions order on sources other than Rule 9011, this tends to support the proposition that Chern and Allen were not given fair notice before the imposition of the sanctions at issue in this appeal.

**Conclusion**

For the foregoing reasons, the Court directs the Clerk to enter judgment reversing the bankruptcy court's decision to impose sanctions upon appellants Kevin Chern and Jason Allen.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 11, 2021